RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED SPECIALTY INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

COLE'S PLACE, INC.,

*Defendant-Appellant*.

No. 18-5545

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:17-cv-00326—Thomas B. Russell, District Judge.

Argued:  February 1, 2019

Decided and Filed:  August 22, 2019

Before:  GRIFFIN, WHITE, and BUSH, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Marque G. Carey, SMITH & CAREY, PLLC, Louisville, Kentucky, for Appellant.
J. Kendrick Wells IV, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellee.
**ON BRIEF:**  Marque G. Carey, SMITH & CAREY, PLLC, Louisville, Kentucky, for Appellant.
J. Kendrick Wells IV, Griffin Terry Sumner, Jeremiah A. Byrne, Justin S. Fowles, FROST
BROWN TODD LLC, Louisville, Kentucky, for Appellee.

BUSH, J., delivered the opinion of the court in which GRIFFIN, J., joined.  WHITE, J.
(pp. 26–31), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

JOHN K. BUSH, Circuit Judge.  One summer night in 2015, gunshot blasts pulverized the sociable hum of a nightclub in Louisville, Kentucky.  Somebody had brought a firearm into the bar, and the ensuing discharge of bullets struck eight people.  Six of those people sued the nightclub's owner, Cole's Place, Inc. ("Cole's Place"), in state court, arguing that Cole's Place had failed to protect the plaintiffs from a foreseeable harm.  Now that United Specialty Insurance Company ("USIC") has obtained a federal declaratory judgment that it is not obligated to defend or indemnify Cole's Place in the state-court litigation, Cole's Place appeals.

Two issues are before us.  First, did the district court abuse its discretion in exercising Declaratory Judgment Act jurisdiction over USIC's lawsuit?  Second, if the answer to the first question is no, did the district court err in finding that an assault-and-battery exclusion in Cole's Place's insurance policy with USIC applies to the state-court litigation?  Because the district court did not abuse its discretion in exercising jurisdiction and because it correctly applied controlling law to the insurance-coverage issue, we **AFFIRM**.

## I.  BACKGROUND

### A.     The State-Court Litigation

Based on injuries they sustained from the shooting, six plaintiffs filed a total of four lawsuits in state court against Cole's Place, alleging (among other things) that the nightclub owner had negligently failed to protect them.  Three of the four lawsuits sought punitive damages as well as compensatory relief.  On one plaintiff's unopposed motion, the actions were consolidated under the caption *Kendall Latrell Starks v. Cole's Place, Inc.*, Jefferson Circuit Court, Division 8, No. 15-CI-005424.  The complaints allege a "shooting," which three of the complaints also describe as an "attack."  R. 1-2, PageID 115–17, 120–21, 125–29, 134–37.  For example, plaintiff Kendall Starks's complaint makes the following allegations:

13.     That the identity of the person suspected of committing the shooting described herein was known to Defendant Cole's Place prior to the period July 18–19, 2015 [the night when the shooting allegedly occurred];

14.     That the person suspected of committing the shooting described herein was a patron of the Defendant during the period noted in this Complaint;

. . . .

17.     That . . . Defendant Cole's Place failed to hire, train, supervise and otherwise employ appropriate security personnel and procedures to prevent or otherwise protect patrons visiting its business premises from a known history of potentially violent conduct;

18.     That . . . Defendant Cole's Place failed to take appropriate adequate steps to prevent or otherwise protect members of the general public visiting its business premises from a known history of potentially violent conduct;

. . . .

## V. Counts

**A.      That the Defendant did commit the tort of outrageous conduct by:**

1)      wrongfully and intentionally preventing[1] the attack injuring the Plaintiff

2)      by acts which they either knew or should [sic] were not provoked or caused by him, and

3)      did exacerbate said tort by failing to take reasonable steps to prevent the risk of harm to the Plaintiff in an environment with a known history of violent, aggressive conduct . . . .

. . . .

**B.      That the Defendant did commit the tort of negligence in that:**

. . . .

b.      Defendant Cole's Place . . . failed to take proper, reasonable steps to protect the Plaintiff from a substantial risk of aggressive, violent conduct which it knew or reasonably should have known might occur towards members of the general public including the Plaintiff, and by otherwise failing to prevent the use of unreasonable force against and upon the person of the Plaintiff . . . .

*Id.* at PageID 115–18. The remainder of the Starks complaint, and two of the other state-court complaints, make similar allegations, including the following:

---

[1]It appears that this sentence is meant to read, "failing to prevent the attack."

[T]he person suspected of committing the shooting . . . had, within a short period of time preceding the . . . incident . . . , been instructed to leave the Defendant's business premises for being involved in illegal activity and/or for being involved in altercations with the Defendant's private security, staff and/or patrons.

. . . .

That . . . on the same evening of the shooting but prior to the shooting . . . the person suspected of committing the shooting had instigated and participated in an altercation and/or argument with another unknown patron but was not removed from the premises . . . .

. . . .

Defendant . . . failed to take steps to protect Plaintiff from the aforementioned attack which it knew or reasonably should have known might occur against it's [sic] patrons and/or members of the general public, including the Plaintiff . . . .

*Id.* at PageID 126, 127, 136. Finally, the shortest of the state-court complaints alleges that:

Plaintiff, a business invitee of . . . Cole's Place[] . . . was injured when he was shot on the premises . . . .

. . . .

It is known or reasonably should have been known by . . . Cole's Place[] . . . that there were previous violent incidents on this property.

. . . .

Cole's Place[] . . . had notice of previous dangerous and violent acts on its property during events.

. . . .

The incident and Plaintiff's resulting injuries and damages were caused and brought about by the negligence and carelessness of . . . Cole's Place[] . . . in creating and/or allowing a foreseeable danger to the Plaintiff.

*Id.* at PageID 120–21.

After the state-court plaintiffs filed their complaints, Cole's Place filed a third-party complaint against Kevon Taylor, who had entered an *Alford* plea to two criminal charges of assault in the second degree arising from the shooting.[2] The third-party complaint alleges that

---

[2]Under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Therefore, Taylor entered what was in effect a guilty plea to assault for purposes of punishment, but he never admitted being the shooter.

Taylor "was the individual who actually did the shooting" and seeks apportionment of fault against Taylor in the ongoing state litigation. R. 15-2, PageID 264–65. In the alternative, the third-party complaint seeks indemnification against Taylor in the event Cole's Place is found liable in the state lawsuits. Taylor filed an answer to the third-party complaint, denying that he had been the shooter.

B.      The Insurance Policy

At the time of the shooting and all times relevant to this appeal, Cole's Place has held an insurance policy with USIC. Relevant to this appeal, the policy provides:

> **SECTION I—COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1.      **Insuring Agreement**
>
>> a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, *we will have no duty to defend* the insured against any "suit" seeking damages for "bodily injury" or "property damage" *to which this insurance does not apply*.

R. 1-1, PageID 23 (emphases added).

The policy also contains a list of exclusions from coverage, including the following:

> **EXCLUSION—ASSAULT AND BATTERY**
>
> . . . .
>
> 1.      This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:
>
>> (a)      any actual, threatened or alleged assault or battery;
>>
>> (b)      the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;
>>
>> (c)      the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;

    (d)    the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;

    (e)    the negligent:

        (i)    employment;

        (ii)    investigation;

        (iii)    supervision;

        (iv)    training;

        (v)    retention;

    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1. (a), (b), (c) or (d) above;

    (f)    any other cause of action or claim arising out of or as a result of 1. (a), (b), (c), (d) or (e) above.

2.    We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:

    (a)    any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.

    (b)    any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

    (c)    any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

3.    For the purposes of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

*Id.* at PageID 56.

In addition, the policy provides:

This insurance does not apply to:

. . . .

5.        Punitive, Exemplary Treble Damages or Multipliers of Attorneys' Fees

Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

*Id.* at PageID 51. USIC undertook the defense of Cole's Place in the state lawsuits, reserving its right to seek a judicial declaration that it was not obligated to defend or indemnify.

C.      The Federal-Court Litigation

While the state lawsuits were still pending, USIC sued Cole's Place in the United States District Court for the Western District of Kentucky. The complaint invoked the district court's discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and sought a declaration that the policy's assault-and-battery and punitive-damages exclusions exempted USIC from any obligation to defend or indemnify Cole's Place in the state lawsuits.

Cole's Place filed an answer to USIC's complaint, asserting affirmative defenses and counterclaims. In its answer, Cole's Place asserted that the district court should not exercise jurisdiction over USIC's claims under the Declaratory Judgment Act. At the same time, however, Cole's Place also asserted counterclaims requesting that the district court declare that Cole's Place *was* entitled to be defended and indemnified by USIC in the state lawsuits. Cole's Place also asserted counterclaims for breach of contract and bad faith against USIC.

USIC moved for summary judgment, and the following day, Cole's Place moved to dismiss for lack of jurisdiction. The district court denied Cole's Place's motion and entered summary judgment in favor of USIC on the Declaratory Judgment Act issues. In its opinion, the court held that the exercise of jurisdiction was proper under the Declaratory Judgment Act and that the assault-and-battery exclusion in the policy applied to the state lawsuits. Therefore, the district court declared that USIC had no obligation to indemnify or defend Cole's Place in those lawsuits.

The district court also held that the punitive-damages exclusion was enforceable. Cole's Place argued that this exclusion applied, at most, to the duty to indemnify and did not absolve USIC of a duty to *defend* Cole's Place against claims that might give rise to punitive damages. But the district court found that because USIC was already exempted from the duty to defend by the assault-and-battery exclusion, any arguments based on the scope of the punitive-damages exclusion could not re-impose that duty for purposes of the state-court lawsuits. Therefore, the district court entered summary judgment for USIC on this claim as well.

Finally, the district court entered summary judgment in favor of USIC on all of Cole's Place's counterclaims. First, the court noted that the nightclub owner's counterclaims for declaratory judgment relating to the assault-and-battery and punitive-damages exclusions must fail, because the court had already declared judgment for USIC on those issues. The court then held that USIC had not breached the duty to indemnify because no such duty had yet arisen—the state-court lawsuits were still pending, and no damages had been awarded—and, in any event, USIC had no duty to indemnify or to defend Cole's Place in those lawsuits. And without a colorable breach-of-contract claim, the nightclub owner could not pursue a claim for bad faith either.

Cole's Place filed this appeal. It asks us to find that the district court erred in exercising jurisdiction under the Declaratory Judgment Act and in granting USIC's summary-judgment motion.[3]

## II. DISCUSSION

A.  Exercise of Jurisdiction Under the Declaratory Judgment Act

1.  Standard of Review

This court reviews the district court's determination whether to exercise jurisdiction under the Declaratory Judgment Act for an abuse of discretion. *Scottsdale Ins. Co. v. Flowers*,

---

[3]Cole's Place does not appear to challenge the district court's rulings on its breach-of-contract and bad-faith claims; instead, its briefing focuses on the Declaratory Judgment Act issues. Although the statement of the issues in USIC's brief includes the breach-of-contract and bad-faith claims, USIC also acknowledges that Cole's Place makes no arguments regarding those claims on appeal. Because Cole's Place does not ask us to reverse as to those claims, we do not address them.

513 F.3d 546, 554 (6th Cir. 2008). We will reverse if we reach "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (quoting *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003)). In other words, "[a]n abuse of discretion occurs when the district court 'relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law.'" *United States v. Pamatmat*, 756 F. App'x 537, 542 (6th Cir. 2018) (quoting *United States v. Arny*, 831 F.3d 725, 730 (6th Cir. 2016)).

2.	Applicable Law

The Declaratory Judgment Act provides, with certain exclusions not applicable here:

> In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

This court considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is appropriate:

> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted). Furthermore, this court has divided the fourth factor into three sub-factors:

> (1) [W]hether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814–15 (6th Cir. 2004)).

Although the above formulation indicates the court should balance the five factors, "we have never indicated" the relative weights of the factors. *Id.* at 563. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). In reviewing a district court's entry of a declaratory judgment, therefore, we keep in mind that "[t]he essential question is always whether [the] district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* (citation omitted). "District courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are peculiarly within their grasp.'" *Flowers*, 513 F.3d at 554 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

3.     Discussion

a.     *Grand Trunk* Factors One and Two

As noted, the first two *Grand Trunk* factors ask "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *Flowers*, 513 F.3d at 557 (citing *Bituminous*, 373 F.3d at 814; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

The district court found that these two factors support the exercise of jurisdiction. In doing so, the district court recognized that this court's past decisions appear to diverge over whether a declaratory judgment as to insurance coverage "settle[s] the controversy" and "clarif[ies] the legal relations in issue" in the sense required by *Grand Trunk*. 746 F.2d at 326.

With regard to the first factor, several cases hold that a declaratory judgment regarding coverage does "settle the controversy," because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation. *See, e.g.*, *Hoey*, 773 F.3d at 760–61 (acknowledging the split but finding the district court did not abuse its discretion in finding the first factor weighed in favor of jurisdiction); *Flowers*, 513 F.3d at 556; *Northland*, 327 F.3d at 454; *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987), *abrogation on other grounds recognized by Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986). Others hold that such a judgment does not "settle the controversy" between all relevant parties where, for instance, the state-court tort plaintiff has not been joined in the declaratory-judgment action. *See, e.g.*, *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous*, 373 F.3d at 813–14; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991). On that reasoning, a federal declaratory-judgment action does not satisfy the first *Grand Trunk* factor because the ongoing state-court litigation can reach the same issues, and the insurer can be joined in that litigation or can defend against an indemnity action later brought by the state-court defendant. The latter set of cases has sometimes emphasized the existence of difficult or fact-bound issues of state law awaiting resolution in the state-court litigation. *See Bituminous*, 373 F.3d at 813–14; *Omaha*, 923 F.2d at 447.

This court's most recent decisions have held that district courts did not abuse their discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity. *See Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 437–38 (6th Cir. 2018); *Hoey*, 773 F.3d at 760–61; *Flowers*, 513 F.3d at 556. That is the case here. USIC and Cole's Place are the only parties currently litigating the issue of insurance coverage, and a declaratory judgment resolves that issue. Furthermore, as we will discuss further below, the application of Kentucky law to the coverage issue is straightforward. In these circumstances, efficiency considerations favor the exercise of federal jurisdiction, and fairness and federalism concerns do not counsel against it. *See Hoey*, 773 F.3d at 759.

As the Dissent points out, in *Hoey* and *Flowers*, the insurer joined the state-court plaintiffs in the declaratory-judgment action. *See* Dissent at 27. Therefore, the declaratory

judgment had binding effect on most, if not all, parties potentially financially affected. Here, the state-court plaintiffs are not parties. However, for two related reasons, we do not believe their absence automatically dictates that the first *Grand Trunk* factor is unsatisfied.

First, we believe the absence of a state-court party carries most weight when issues relevant to the coverage controversy are actually and concurrently being litigated in state court. *See Bituminous*, 373 F.3d at 813–14. After all, it is in such a situation that a live "controversy" exists and may remain to be adjudicated (on preclusion grounds or otherwise) after the federal district court issues its declaratory judgment. If there is no such parallel state-court litigation, the federal court is merely predicting that another controversy involving the same legal and factual issues as the declaratory-judgment action will arise in state court—an eventuality that may or may not develop. Here, Cole's Place points to no proceeding in which parallel issues are being litigated.[4] Therefore, the district court did not err in determining that the one live controversy over coverage will be settled by a declaratory judgment.

Second, more than ten years after we decided *Grand Trunk*, the Supreme Court expressly declined "to delineate the outer boundaries of [the district court's] discretion in . . . cases in which there are no parallel state proceedings." *Wilton*, 515 U.S. at 290. *Wilton* established abuse of discretion as the standard for reviewing a district court's decision whether to exercise declaratory jurisdiction. *Id.* at 289–90. That case involved a state-law indemnification claim— which "encompassed the same coverage issues raised in the declaratory judgment action"—that was already pending when the federal district court declined to hear the declaratory-judgment action.[5] *Id.* at 280. The *Wilton* Court declined to opine on other possible fact patterns, such as situations (like this case) where the insured party has not brought an indemnification action in state court. *See id.* at 290. Under *Wilton*, we see no reason to harden the first *Grand Trunk* factor into a rule for such cases. Instead, under the first *Grand Trunk* factor, we consider on the

---

[4]Cole's Place and the Dissent argue that the factual question of the shooter's intent is at issue in the state-court litigation, *see* Dissent at 28–29, but as we will discuss in section II(A)(3)(c)(i) below, we do not agree that that question has any bearing on the coverage controversy.

[5]*Wilton* involved a stay of a declaratory action, not a dismissal as Cole's Place sought here. However, the Supreme Court noted in *Wilton*, "[t]hat the court here stayed, rather than dismissed, the action is of little moment," 515 U.S. at 283, and the same principles govern the district court's exercise of discretion in either situation.

facts of each case whether a judgment will "settle the controversy." Here, for reasons explained above, the district court did not err in finding that it will.

Therefore, it was within the district court's discretion to find that the first *Grand Trunk* factor is satisfied. As the discussion in section II(B)(2) below will show, a straightforward application of clear state law settles the issue of insurance coverage, and there is no pending state proceeding in which the coverage issue, or a question of fact or of state law relevant to the coverage issue, is being litigated.

Similarly, the district court did not abuse its discretion in determining that a declaratory judgment "would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Although a federal declaratory judgment does not resolve the relative rights of all parties in the state-court litigation, it does determine whether the insurer must continue defending the insured party and whether it will have to indemnify that party should the state-court plaintiff prevail. That determination settles the legal relationship of the insurer and the insured.

b.       *Grand Trunk* Factor Three

The third factor asks "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326 (citations omitted). The district court found that this factor "does not weigh against the exercise of jurisdiction."[6] R. 24, PageID 404.

The third factor usually does not weigh heavily in the analysis. This court has found evidence of "procedural fencing" where the declaratory-judgment plaintiff filed its suit in apparent anticipation of litigation in state court. *See, e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 788–90 (6th Cir. 2004). Because the inquiry focuses on "whether the declaratory plaintiff has filed in an attempt to get [its] choice of forum by filing first," *id.* at 789, we generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court. *See, e.g.*, *Flowers*, 513 F.3d at 558 ("[T]here is no

---

[6]Cole's Place argues that the district court should not have found "that this factor weighed in favor of the exercise of jurisdiction," Appellant Br. at 18, but the district court simply found the factor is neutral.

evidence . . . that [the insurer's] action was motivated by procedural fencing. On the contrary, [the insurer] instituted this action several years after the state court proceedings began."). If there is no evidence of procedural fencing, we often find that the factor is "neutral," *Travelers*, 495 F.3d at 272, and "does not point toward *denying* jurisdiction," *Flowers*, 513 F.3d at 559 (emphasis added).

Here, we agree with the district court that the third factor is neutral. The district court noted that "[t]here is no evidence . . . that USIC's decision to seek a declaratory judgment in federal court was motivated by procedural fencing . . . . USIC did not file . . . suit until almost nine months after the last state court complaint was filed . . . ." R. 24, PageID 402. Because the district court followed Sixth Circuit law in "giv[ing] the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action,'" there was no abuse of discretion. *Flowers*, 513 F.3d at 558 (second alteration in original) (quoting *Bituminous*, 373 F.3d at 814).

### c. *Grand Trunk* Factor Four

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. As noted above, this court has divided the inquiry into three sub-parts, which we will address in turn. *See Flowers*, 513 F.3d at 560.

#### i. Whether the Underlying Factual Issues are Important to an Informed Resolution of the Case

We agree with the district court that this sub-part cuts in favor of jurisdiction. As discussed above, the presence of factual issues that are also being decided in the state-court litigation usually cuts against finding that factors one and two are satisfied; that consideration is also part of the analysis of factor four. *See, e.g.*, *Bituminous*, 373 F.3d at 815 (noting that "*two* state actions, involving the same factual issue that is presented in this declaratory judgment action, were pending when this action was filed" and that "the underlying factual issues are important to an informed resolution of this case"). Here, comparing the state lawsuits with USIC's declaratory-judgment complaint reveals no as-yet-unresolved factual issues that stand between a federal court and its informed resolution of the coverage question. Furthermore, to the

extent the fourth *Grand Trunk* factor also requires asking whether the declaratory action would involve the district court in difficult questions of state *law*, *see, e.g.*, *Travelers*, 495 F.3d at 272–73, no such difficult issues are present here.

Cole's Place and the Dissent argue that the coverage question does require a factual finding—that the alleged shooter, Kevon Taylor, acted with the intent required for assault or battery. *See* Dissent at 29. USIC disagrees, maintaining that "the coverage issues in this case do not depend upon any factual findings by the state court in the Injury Lawsuits." Appellee Br. at 40.

USIC is correct. The question of insurance coverage does not involve the question whether Taylor committed an assault or battery. Instead, the question for the district court, and for this court, is whether the complaints contain "any allegation which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (citation omitted). In other words, we ask whether "the language of the complaint would bring [the state-court litigation] within the policy coverage regardless of the merit of the action." *Id.* (citation omitted). Under Kentucky law, therefore, we make the coverage determination by reference to two documents: the complaint and the policy. Here, even if factual issues remain about the shooter's intent, the modifying phrases in the exclusion make explicit that a legally proven assault or battery is not required. The policy excludes, among other things, "any actual, threatened or *alleged* assault or battery." (emphasis added).

We will consider in detail below whether all of the allegations in the state-court complaints necessarily depend on an assault or battery. For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues. Relevant Kentucky law is clear, and a federal court can confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their jurisdiction. *Cf. Travelers*, 495 F.3d at 272 (finding the fourth *Grand Trunk* factor cut against exercising jurisdiction where "the issue [of tort law that underlay the coverage determination] ha[d] not been squarely resolved under Kentucky law"); *Bituminous*, 373 F.3d at 815–16

("Where . . . there are two potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction.").

*Travelers*, upon which the Dissent relies, does not persuade us otherwise. *See* Dissent at 28–29. True, there we held that the existence of unresolved factual issues counseled against the exercise of jurisdiction. *See* 495 F.3d at 273. But *Travelers* is not like this case. In *Travelers*, the policies at issue did not unambiguously exclude even "alleged" intentional torts from coverage. *See id.* at 269–70. Here, by contrast, the policy expressly excludes coverage of litigation arising from an *alleged* battery, so we need not determine whether facts constituting a battery have been or will be proven.

In sum, there are no factual issues remaining in the state-court litigation or complex state-law issues that are "important to an informed resolution" of this case. *Flowers*, 513 F.3d at 560. Therefore, *Grand Trunk* factor four, subfactor one, weighs in favor of exercising jurisdiction here. *See Flowers*, 513 F.3d at 561.

> ii.     Whether the State Trial Court is in a Better Position to Evaluate Those Factual Issues than is the Federal Court

The district court found that this subfactor cuts in favor of exercising jurisdiction. Although the general presumption that state courts are in a better position to decide questions of state law "appears to have less force when the state law is clear and when the state court is not considering the issues," *Flowers*, 513 F.3d at 560, that does not necessarily mean that the concern is completely dispelled in these circumstances. However, in this case, not only is state law clear; there are also no unresolved factual issues relevant to the coverage question pending in the state-court action. Thus, although we do not agree that this subfactor affirmatively supports jurisdiction, we find that it is neutral and does not weigh heavily in the balance.

> iii.     Whether There is a Close Nexus Between Underlying Factual and Legal Issues and State Law and/or Public Policy, or Whether Federal Common or Statutory Law Dictates a Resolution of the Declaratory-Judgment Action

The district court found that this subfactor cuts against jurisdiction, and we agree. No federal-law questions are involved in the coverage issue. Furthermore, even in cases where state

law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy.  *See, e.g.*, *Flowers*, 513 F.3d at 561; *see also Travelers*, 495 F.3d at 273.

In sum, the first subfactor of the fourth *Grand Trunk* factor cuts in favor of jurisdiction; the second is neutral; and the last subfactor cuts against it.  Therefore, this factor overall is neutral.

> d.     *Grand Trunk* Factor Five

The fifth factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief.  *Grand Trunk*, 746 F.2d at 326.  The district court did not abuse its discretion in finding that this factor cuts against the exercise of jurisdiction.

This court has sometimes found an alternative remedy is "better" than federal declaratory relief if state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions.  *See, e.g.*, *Bituminous*, 373 F.3d at 816; *see also Travelers*, 495 F.3d at 273.  Here, USIC could seek declaratory relief in a Kentucky court:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

Ky. Rev. Stat. § 418.040.  Although such a declaration would provide USIC with the same remedy it seeks in federal court, the state remedy has the advantage of allowing the state court to apply its own law.  Therefore, the district court did not abuse its discretion in finding that the availability of a state-court alternative undermines the argument for jurisdiction.  *See Flowers*, 513 F.3d at 562 ("We conclude that, rather than applying a general rule, our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff.").

e.       Conclusion

The district court did not abuse its discretion in exercising jurisdiction under the Declaratory Judgment Act. *Grand Trunk* factors one and two support jurisdiction; factor three is neutral; factor four is neutral; and factor five arguably disfavors the exercise of jurisdiction. The district court reached the same conclusion on each factor (except for factor four, which it found supported jurisdiction), and, after balancing all five factors, it determined that exercising jurisdiction was proper. As we noted above, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case" in a Declaratory Judgment Act litigation, and "[t]he essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Hoey*, 773 F.3d at 759 (citation omitted). Finding ourselves in agreement with most of the district court's analysis, we hold that the district court did not abuse its discretion in exercising jurisdiction under the Declaratory Judgment Act.

B.       Summary Judgment for USIC

The district court determined that USIC was entitled to summary judgment because the assault-and-battery exclusion applies to the state lawsuits. Finding no error, we affirm.[7]

1.       Applicable Law

"As a general rule, interpretation of an insurance contract is a matter of law for the court." *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)). Interpreting the contract requires this court to "apply Kentucky law in accordance with the controlling decisions of the Supreme Court of Kentucky." *Auto Club Prop.-Cas. Ins. Co. v. B.T. ex rel. Thomas*, 596 F. App'x 409, 413 (6th Cir. 2015) (citing *OneBeacon Am. Ins. Co. v. Am.*

---

[7]The district court did not expressly rule on whether the punitive-damages exclusion would exempt USIC from the duty to defend or to indemnify Cole's Place should the assault-and-battery exclusion not apply. Because the district court reached the correct result on the assault-and-battery exclusion, we also need not consider the punitive-damages exclusion. Furthermore, although Cole's Place argues that USIC must defend it in the state-court litigation, it does not appear to contest that the punitive-damages exclusion releases USIC from the duty to *indemnify* against punitive-damages awards.

*Motorists Ins. Co.*, 679 F.3d 456, 460 (6th Cir. 2012)).  "If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data."  *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citation omitted).  "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state supreme court] would decide otherwise."  *Id.* (citation omitted).  "This court's own prior published decisions interpreting Kentucky law are also controlling, unless Kentucky law 'has measurably changed in the meantime.'"  *Auto Club*, 596 F. App'x at 413 (quoting *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009)).

"Terms of an insurance policy are given their plain and ordinary meaning and, when the terms are clear and unambiguous, must be enforced as drafted."  *Auto Club*, 596 F. App'x at 412 (citation omitted); *see also Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007).  "Where an exclusion is susceptible [of] two reasonable interpretations, the interpretation favorable to the insured is adopted."  *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994) (citation omitted).  However, "[t]he rule of strict construction against an insurance company certainly does not mean that *every* doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation . . . ."  *Id.* (emphasis added).

In insurance-coverage cases, "[t]he insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy."  *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (citation omitted).  Therefore, we must compare "the allegations in the underlying complaint with the terms of the insurance policy."  *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003).  If there is no possibility of coverage, there is no duty to defend or to indemnify.[8]  *See Thompson v. W. Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. Ct. App. 1992).

---

[8]Cole's Place argues that the coverage question requires "reference to the complaint and *known facts*." Appellant Br. at 20 (citing *Brown Found.*, 814 S.W.2d at 279; *Lenning v. Comm. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)).  *Brown Foundation* does not say that, and we have been unable to find any Kentucky cases that do. Instead, *Brown Foundation* states that "[t]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action."  814 S.W.2d at 279

Our review of a district court's grant of a motion for a declaratory judgment is de novo. *Flowers*, 513 F.3d at 563. Where, as here, the district court granted summary judgment, the movant must have shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show that the grant of summary judgment was error, the non-moving party must establish genuinely disputed material facts by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). And in this process, we view all "evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013) (citation omitted). Applied in the insurance-exclusion context, these principles require the insurer (USIC) to demonstrate that there is no genuine dispute of material fact and that the underlying litigation involving the insured (Cole's Place) is excluded from coverage as a matter of law. *See* Fed. R. Civ. P. 56(a). As the insured, Cole's Place must then point to evidence that shows a genuine dispute of material fact or must otherwise show that USIC is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(1).

2.      Discussion

To determine whether summary judgment for USIC was proper, we ask whether there is a genuine dispute of material fact about whether the state-court plaintiffs allege only injuries "arising out of or resulting from" one of the types of incidents excluded by the policy. R. 1-1, PageID 56. The excluded incidents include the following: "*any* actual, *threatened* or *alleged* assault or battery." *Id.* (emphases added).

The coverage determination involves two questions of Kentucky law, which we will address in turn. First, do all claims in the state-court complaints depend on an underlying alleged

---

(citation omitted). However, several federal-court decisions applying Kentucky law do state a "known facts" rule, and the proposition that an insurer has a duty to defend if known facts outside the complaint demonstrate the possibility of coverage enjoys support in many jurisdictions. *See, e.g.*, *KSPED LLC v. Va. Sur. Co.*, 567 F. App'x 377, 383 (6th Cir. 2014); *Lenning*, 260 F.3d at 581; *Outdoor Venture Corp. v. Phila. Indem. Ins. Co.*, No. 6:16-cv-182-KKC, 2018 WL 4656400, at *3, *4, *16 (E.D. Ky. Sept. 27, 2018); *see generally* 3 Jeffrey E. Thomas & Francis J. Mootz, III, *New Appleman on Insurance Law Library Edition: Commercial General Liability Insurance* § 17.01[2][b][i] (2013). Even assuming that we must examine "known facts" alongside the complaint, however, those facts that are "known" at this juncture do not support Cole's Place, as the analysis below will show.

"assault or battery"? As discussed below, all claims in those complaints depend on an alleged battery, which raises the second question: do the state-court plaintiffs' claims based on failure to protect constitute claims "arising out of or resulting from" the battery? Below, we will answer that question in the affirmative as well.

a. Do the State-Court Claims Necessarily Allege an "Assault or Battery"?

In addressing whether an "assault or battery" is alleged in the state-court actions, we must initially determine what definition of those terms to apply. Beyond stating that "the words assault and battery are intended to include, but are not limited to, sexual assault," the policy provides no definition. R. 1-1, PageID 56. Apparently assuming that the meaning of "assault or battery" is ambiguous, the district court adopted Cole's Place's suggestion of applying the legal definitions of these terms, reasoning that satisfying those definitions would be more difficult for USIC than satisfying the meaning of the two words in ordinary parlance. *See St. Paul*, 870 S.W.2d at 226 (stating that if an exclusionary term has two reasonable interpretations, the court should resolve any doubts in favor of the insured). USIC argues, however, that the words "assault" and "battery" should be given their ordinary meaning.

Like the district court, we will apply the legal definitions. For one thing, although "*words which have no technical meaning in law*[] must be interpreted in light of the usage and understanding of the common man," *Kenway Contracting*, 240 S.W.3d at 638 (emphasis added) (citation omitted), the words "assault" and "battery" do have technical meanings in law. For another, USIC's proposed ordinary definitions say an assault is (among other things) "a violent physical or verbal attack" or a "threat or attempt to inflict offensive physical contact or bodily harm on a person . . . that put the person in immediate danger of or in apprehension of such harm or contact," and a battery is "an offensive touching or use of force on a person without the person's consent." Appellee Br. at 27 (alteration in original) (quoting *Kotini v. Century Sur. Co.*, 411 S.W.3d 374, 380 (Mo. Ct. App. 2013)). Assuming that the touching required under USIC's preferred ordinary definition of battery is an intentional touching, it appears that applying the legal definition would result in practically the same coverage as applying the ordinary definition.

Finally, because one might argue that USIC's preferred ordinary definition of "battery" is not limited to *intentional* "offensive touching" and is in fact the broader definition, we will take a cautious approach. *See St. Paul*, 870 S.W.2d at 226. We have found no Kentucky cases treating the words "assault" and "battery" in an insurance contract as ambiguous, but we are also unaware of any Kentucky cases in which the parties disputed the proper definitions. We will therefore focus on whether a legally defined "battery" has been alleged. It has, so we need not ask whether an "assault" has been alleged.

Under Kentucky law, a battery is "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him," and "intent is an essential element." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (citations omitted). The "intent" required is not necessarily the intent to cause harm or even the intent to make physical contact. Instead, substantial certainty of contact is enough. *See Graves v. Dairyland Ins. Grp.*, 538 S.W.2d 42, 44 (Ky. 1976). In *Graves*, the Kentucky Supreme Court quoted a paragraph from a torts treatise as an example of the intent required for battery:

> The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it . . . . [W]here a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with . . . as though he had intended it.

*Id.* (quoting William L. Prosser, *Prosser on Torts* § 8, at 32 (4th ed. 1971)).

Under this case law, we cannot read the allegations in the state-court complaints as consistent with anything less than battery. Nowhere do the complaints suggest that the shooting was accidental or even merely reckless; indeed, three of them use the word "attack" to describe the shooting. R. 1-2, PageID 117, 128, 136. Even the fourth complaint, which does not use the word "attack," alleges a battery. That complaint alleges that Cole's Place should have known "that there were previous violent incidents on [the] property" and that Cole's Place "had notice of previous dangerous and violent acts on its property during events." *Id.* at PageID 121. Alleging that "previous . . . violent incidents" put Cole's Place on notice of a risk implies that the incident underlying the lawsuit was also an act of violence, not an accident. In other words, previous violent incidents put Cole's Place on notice that violent incidents would happen again.

The complaint's description of a nightclub shooting, which Cole's Place should have prevented because it knew of previous violent incidents during business hours, evokes—at minimum—the firing of a gun in a crowded room that satisfies the intent element of battery. *See Graves*, 538 S.W.2d at 44.**9**

To defeat the summary-judgment motion, Cole's Place is required to demonstrate that the coverage question depends on disputed facts by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). It has not done so. In support of its contention that critical fact issues remain about the shooter's intent, Cole's Place points only to Taylor's denial (in the state-court litigation) of having done the shooting and to Taylor's *Alford* plea, which did not require him to admit the fact of his involvement in the shooting.**10**

But these two facts do not create a genuine dispute calling into question whether a battery is alleged to have occurred. First, Taylor's denial raises an issue about who committed the alleged shooting, not about whether that shooting constituted a battery. Cole's Place does not argue that no shooting occurred; it argues that the shooting may have been accidental, and Taylor's denial has no bearing on that question.

The *Alford* plea does not support Cole's Place either. Although such a plea is not an admission of involvement in criminal behavior, it is nevertheless a guilty plea that results from the defendant's recognition that "the record before the judge contains strong evidence of actual guilt;" a court should not accept an *Alford* plea without ensuring that "there is a factual basis for the plea." *North Carolina v. Alford*, 400 U.S. 25, 37, 38 n.10 (1970). Kentucky's penal code defines assault in the second degree, the crime to which Taylor pled, as an "intentional[]" or "wanton[]" infliction of injury. Ky. Rev. Stat. § 508.020(1). Therefore, Taylor pled guilty to a

---

**9**Indeed, Cole's Place's own brief appears to acknowledge an intentional shooting. Three pages in, Cole's Place states that "the *despicable acts* of the third-party gunman led to the alleged sustained injuries of the State Court Plaintiffs." Appellant Br. at 3 (emphasis added).

**10**Cole's Place discusses Taylor's denial and his *Alford* plea in the section of its brief addressing the propriety of exercising Declaratory Judgment Act jurisdiction. However, it indicates (and indicated at oral argument) that its disagreement with the district court's substantive determination that the assault-and-battery exclusion applies hinges on the same point about the necessity of a factual determination of intent.

charge of intentional or wanton conduct of which, presumably, he believed enough evidence existed to convict him. Even assuming it is proper for us to consider the *Alford* plea, that plea does not make it less likely that the shooting alleged in the state-court complaints was a battery.

In sum, USIC has demonstrated that the state-court complaints allege a battery, and Cole's Place has failed to respond with any genuinely disputed material facts to call that demonstration into question. *See* Fed. R. Civ. P. 56(c)(1).

> b.    Do the State-Court Complaints Allege Claims "Arising out of or Resulting from" a Battery?

Given that the state-court plaintiffs have alleged an underlying battery, the second part of the coverage inquiry is whether claims based on an alleged failure to protect constitute claims "arising out of or resulting from" the battery. The answer is clearly yes. Several decisions of Kentucky courts and this court have held that similar "arising out of" language broadly applied to any litigation causally related to excluded torts or other wrongs, including wrongs allegedly committed by someone other than the insured party. *See Capitol Specialty Ins. v. Indus. Elecs., LLC*, 407 F. App'x 47, 51 (6th Cir. 2011); *Monticello Ins. Co. v. Ky. River Cmty. Care, Inc.*, 173 F.3d 855, 1999 WL 236190, at *5 (6th Cir. 1999) (unpublished table opinion); *Hugenberg v. W. Am. Ins. Co./Ohio Cas. Grp.*, 249 S.W.3d 174, 186–87 (Ky. Ct. App. 2006); *K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 755–56 (Ky. Ct. App. 2005).[11] For example, in *K.M.R.*, the Kentucky Court of Appeals held that an exclusion in a homeowner's liability policy for injuries "[a]rising out of any sexual act, sexual molestation, corporal punishment, or physical or mental abuse" applied to a minor's negligent-supervision lawsuit against her grandmother based on sexual abuse by the grandmother's husband. 171 S.W.3d at 755–56.

If we find—as we have—that a battery has been alleged, there can be no genuine doubt (and Cole's Place asserts none) that Cole's Place's policy with USIC excludes coverage for litigation over an alleged failure to prevent that battery. Under clear Kentucky law, the assault-

---

[11]One Kentucky decision interpreted "arising out of" to have a narrower scope. *See Ky. Sch. Bds. Ins. Tr. v. Bd. of Educ. of Woodford Cty.*, No. 2002–CA–001748–MR, 2003 WL 22520018 (Ky. Ct. App. Nov. 7, 2003). However, that decision predates *Hugenberg* and *K.M.R.* and is unpublished, so *Hugenberg* and *K.M.R.* control on this issue of Kentucky law.

and-battery exclusion applies to the cost of defending that litigation and to any potential damages awards.  Therefore, the district court's entry of summary judgment for USIC was proper.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

**DISSENT**

---

HELENE N. WHITE, Circuit Judge, dissenting.  The district court erred in its analysis of the *Grand Trunk* factors and therefore abused its discretion in exercising jurisdiction over this declaratory-judgment action.  Further, even if exercising jurisdiction was proper, United Specialty Insurance Company ("USIC") has not shown that an exclusion barred coverage as a matter of law.  Accordingly, I respectfully dissent.

**I.       Exercise of Jurisdiction under the Declaratory Judgment Act**

Although we afford a district court "substantial discretion" in deciding whether to exercise jurisdiction under the Declaratory Judgment Act, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008), that discretion is not unlimited.

It is questionable whether the first and second *Grand Trunk* factors[1] support the district court's exercise of jurisdiction here.  The district court's declaratory judgment does not necessarily settle the coverage controversy because the state-court plaintiffs are not parties to this action.  And, the question whether the district court's judgment has other collateral effects is a question of state law.  This court has concluded that district courts abused their discretion under similar circumstances.  *See, e.g.*, *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (concluding that the first and second *Grand Trunk* factors weighed against exercising jurisdiction because the state-court plaintiffs were not parties to the federal declaratory-judgment action and therefore not bound by the judgment); *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814 (6th Cir. 2004) (same).

---

[1]Those factors are:

(1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted).

The majority asserts that the district court properly relied on the line of cases identified by *Flowers* holding "that a declaratory judgment regarding coverage does 'settle the controversy,' because it resolves the dispute between the insurer and insured over who will pay for the state-court litigation." (Maj. Op. at 11.) Crucially, the factual circumstances of those cases did not present the concerns identified by *Travelers* and *Bituminous*, which are present in this case. In each case cited by the majority to support the district court's conclusion on this factor, the state-court plaintiff was also a party to the federal declaratory-judgment action. *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014) (state-court plaintiff party to federal declaratory-judgment action); *Flowers*, 513 F.3d at 550 (same);[2] *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 450 (6th Cir. 2003) (same); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 249 (6th Cir. 1986) (same).[3]

Here, even accepting that the inquiry is focused on resolving the coverage issues, rather than the underlying state-court controversy, questions of fact and ambiguous state-court pleadings prevent this case from being suitable for declaratory judgment.

The second *Grand Truck* factor—whether the declaratory judgment clarifies the legal relations in issue—also counsels against exercising jurisdiction for the same reasons. As *Flowers* explained, "our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." 513 F.3d at 557. Here, the declaratory judgment does not necessarily resolve the coverage controversy because the state-court plaintiffs

---

[2]In *Flowers*, the state-court plaintiff was a party to the federal action, and the issue was whether the employee was an "insured" within the terms of his employer's liability policy. Responding to the state-court plaintiff's argument that the employer was a necessary but not joined party, *Flowers* explained that although the employer was not a party to the federal action, it "was not the insured whose scope of coverage was in controversy" and the controversy was solely one between the insurer, the employee, and the state-court plaintiff. 513 F.3d at 556 n.1.

[3]In the other cases cited by the majority, the district court declined to exercise jurisdiction. *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987), *abrogation on other grounds recognized by Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000); *Mass. Bay Ins. Co. v. Christian Funeral Dirs.*, 759 F. App'x 431, 434 (6th Cir. 2018).

are not parties to the federal action, and the question whether the judgment has other preclusive effects is a matter of state law.[4]

The fourth *Grand Trunk* factor (and its subfactors)[5] likewise counsel against exercising jurisdiction here. Exercising federal declaratory-judgment jurisdiction in this case creates "friction between our federal and state courts and improperly encroach[es] upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326.

The first subfactor weighs against jurisdiction because "the underlying factual issues are important to an informed resolution of the case." *Flowers*, 513 F.3d at 560. The facts, as well as the pleadings, determine whether the exclusions apply. In considering whether the claims could potentially come within the policy's coverage, the district court made factual assumptions about the circumstances of the shooting underlying those claims. The same factual circumstances are at issue in the state-court action. Thus, contrary to the district court's and majority's conclusion, the district court's determinations regarding the circumstances of the shooting create a risk of contradictory factual determinations by the state and federal courts.

The second subfactor—the state trial court's position to evaluate the factual issues—also weighs against exercising jurisdiction. Unlike in this action, the state court has both the alleged victims and the alleged shooter as parties, and there is ongoing discovery concerning the circumstances of the shooting. Here, the district court entered summary judgment without the benefit of discovery on the issue and there is an insufficient factual record, counseling against exercising jurisdiction. Under these circumstances, the state court is necessarily in a better position to evaluate the factual issues implicated in the determination whether the assault-and-

---

[4]I agree with the majority that the third *Grand Trunk* factor is neutral.

[5]The three sub-factors of the fourth *Grand Trunk* factor are:

> (1) [W]hether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (quoting *Bituminous*, 373 F.3d at 814-15).

battery exclusion applies.[6]  *See Travelers*, 495 F.3d at 273 (finding subfactor weighed against jurisdiction where "[t]he parties agreed to submit the motions for summary judgment on the declaratory judgment without discovery, resulting in insufficient facts" to determine coverage).

The majority correctly concludes that the third subfactor weighs against exercising jurisdiction because insurance regulation is an important state-policy interest.  *See Flowers*, 513 F.3d at 561.

Finally, I agree with the majority that the district court reasonably concluded that the fifth *Grand Trunk* factor of the alternative remedy to federal declaratory judgment supports declining jurisdiction.  USIC can file a state declaratory-judgment action to resolve the duty-to-defend and duty-to-indemnify disputes.  *See Bituminous*, 373 F.3d at 816; *see also Travelers*, 495 F.3d at 273.

As this court has recognized, "considerations of efficiency, fairness, and federalism" underlie the question of exercising declaratory-judgment jurisdiction.  *Hoey*, 773 F.3d at 759. Those considerations weigh against exercising jurisdiction.  The declaratory judgment does not promote efficiency because the state-court plaintiffs are not parties to this action.  Exercising jurisdiction in this case creates a risk of friction between the federal and state courts that would undermine principles of federalism.  Determining whether the exclusion applies necessarily requires looking at the underlying circumstances of the shooting, particularly the acts and mental state of the shooter.  The claims in the state-court action also depend in part on the shooter's acts and mental state because those facts bear heavily on the foreseeability of the shooting and whether Cole's Place acted reasonably.

Because the *Grand Trunk* factors together weigh against exercising jurisdiction and the declaratory judgment fails to promote efficiency, fairness, and federalism, I respectfully disagree with the majority's conclusion that the district court did not abuse its discretion in exercising jurisdiction in this case.

---

[6]A Kentucky court may also ask a jury to return a special verdict in which the jury makes written findings upon each issue of fact.  Ky. R. Civ. P. 49.01.

## II.      Application of the Assault-and-Battery Exclusion

The majority concludes that the assault-and-battery exclusion in Cole's Place's policy applies because the state-court complaints allege only a battery. However, the allegations fail to establish that the shooting was necessarily a legal battery. The complaint in one action, *De-Auntay Shrivers v. Cole's Place Inc.*, lacks any mention of an "attack," and does not assert that the shooter had previously engaged in illegal activity or altercations. The plaintiff there alleges only that he was "shot on the premises" and that there was a "foreseeable danger" due to "previous violent incidents" on the property and "previous dangerous and violent acts" during events. (R. 1-2, PID 120-21.) Those allegations fall far short of alleging only injury due to a legal battery; they neither suggest that the shooter acted with the necessary legal intent nor connect the shooter to any prior violent acts at Cole's Place. The majority concludes that "at minimum" the allegations "evoke[]" the example given by the Kentucky Supreme Court of "the firing of a gun in a crowded room." (Maj. Op. at 23 (citing *Graves v. Dairyland Ins. Grp.*, 538 S.W.2d 42, 44 (Ky. 1976)).) However, nothing in the allegations forecloses the possibility that the shooting was accidental or inadvertent, or that the shooter was merely acting negligently.

Even the allegations in the other complaints of an "attack" and prior bad acts of the alleged shooter do not necessarily mean the shooting was a battery. Those allegations can be understood as relevant to Cole's Place's notice of a risk of harm due to inadequate security and do not necessarily mean that the shooting was intentional and that the shooter had the requisite level of intent under Kentucky law. *See Vitale v. Henchey*, 24 S.W.3d 651, 657-58 (Ky. 2000) (holding that intent necessary for battery is "an intent to make contact with the person, not the intent to cause harm"); *Graves*, 538 S.W.2d at 44 (suggesting that action with "substantial certainty" to make contact satisfies intent element). Critically, there are no allegations concerning the shooter's actions and how the gun was fired, and we lack crucial information necessary to conclude that the complaints allege only injury arising from a legal battery under Kentucky law.

USIC has the burden of establishing the exclusion here. *See Inter–Ocean Ins. Co. v. Engler*, 632 S.W.2d 459, 461 (Ky. Ct. App. 1982) (holding that insurer had burden of proving that insured's symptoms were present during a specified exclusion period); *see also Pasha v.*

*Commonwealth Land Title Ins. Co.*, No. 2013-CA-000848-MR, 2014 WL 5510931, at *3 (Ky. Ct. App. Oct. 31, 2014) ("The burden is on the insurer to establish that an exclusion bars coverage." (citing 17A Couch on Insurance 3d § 254:12*; Inter–Ocean Ins. Co.*, 632 S.W.2d at 461)); *Kentucky Sch. Boards Ins. Tr. v. Bd. of Educ. of Woodford Cty.*, No. 2002-CA-001748-MR, 2003 WL 22520018, at *9 (Ky. Ct. App. Nov. 7, 2003) ("[A]n insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion." (internal quotation marks omitted)). Given the sparse allegations and limited known facts in the underlying state case, USIC has not met its burden to establish that the state-court complaints allege and involve only injuries arising from an assault or battery and that the exclusion thus applies.

## III.    Conclusion

For the above reasons, I respectfully dissent.