RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

CARDINAL HEALTH, INC.,

> *Plaintiff-Appellee*,

*v.*

NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA,

> *Defendant-Appellant*.

No. 21-3770

─────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:20-cv-05854—Edmund A. Sargus, Jr., District Judge.

Argued:  March 10, 2022

Decided and Filed:  March 30, 2022

Before:  SUTTON, Chief Judge; GIBBONS and GRIFFIN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Joseph G. Davis, WILLKIE, FARR & GALLAGHER, LLP, Washington, D.C., for Appellant.  Mark J. Andreini, JONES DAY, Cleveland, Ohio, for Appellee.  **ON BRIEF:** Joseph G. Davis, WILLKIE FARR & GALLAGHER, LLP, Washington, D.C., Mitchell J. Auslander, Christopher J. St. Jeanos, WILLKIE FARR & GALLAGHER LLP, New York, New York, Quintin F. Lindsmith, Drew H. Campbell, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellant.  Mark J. Andreini, JONES DAY, Cleveland, Ohio, Michael H. Ginsberg, JONES DAY, Pittsburgh, Pennsylvania, Michael R. Gladman, JONES DAY, Columbus, Ohio, for Appellee.

—————————

**OPINION**

—————————

JULIA SMITH GIBBONS, Circuit Judge.   Cardinal Health, Inc., is one of several defendants named in the multitude of ongoing state and federal lawsuits against opioid manufacturers, distributors, and dispensers seeking damages related to the nation's opioid epidemic.  Cardinal Health sought defense costs under its insurance policies with National Union Fire Insurance ("National Union"), which has continually reserved its right to deny coverage. After Cardinal Health brought a declaratory action in Ohio state court, National Union removed the case to federal court, seeking relief pursuant to the Declaratory Judgment Act.  The district court declined to exercise jurisdiction and granted Cardinal Health's motion to remand to state court.  Because the district court did not abuse its discretion, we affirm.

**I**

Cardinal Health, a distributer of wholesale pharmaceutical products, purchased multiple commercial umbrella insurance policies from National Union covering the period of June 30, 1999, through June 30, 2004.   Various plaintiffs, including governmental entities, Native American tribes, individuals, hospitals, unions, and other third-party healthcare payors, have filed more than three thousand lawsuits in federal and state courts across the country against Cardinal Health and other manufacturers, distributers, and dispensers of prescription opioids (the "opioid litigation").  The majority of federal cases are consolidated in a coordinated, multidistrict proceeding pending in the Northern District of Ohio—*In re National Prescription Opiate Litigation*, Case No. 1:17-MD-2804.

The opioid litigation plaintiffs generally allege that "Cardinal Health, as a distributor, caused, or contributed to, the nation's opioid crisis by failing to detect or report suspicious or excessive orders of prescription opioids, failing to take appropriate steps to stop fulfillment of such orders, and failing to oppose allegedly improper conduct of other" named defendants. *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 2:20-CV-5854, 2021 WL 3184947, at *2 (S.D. Ohio July 28, 2021).  Plaintiffs "assert a wide variety of federal and

state causes of action, many seeking to recover for increased payments, services, treatment, and/or care allegedly necessitated by the opiate-related addictions, overdoses, and deaths of those they serve." *Id.* Cardinal Health began seeking coverage under its insurance policies for the opioid litigation in 2018. National Union has consistently reserved its right to deny coverage.

Cardinal Health filed this action in the Franklin County, Ohio Court of Common Pleas seeking declarations related to the rights and obligations of the parties under the policies, including whether National Union has a duty to defend Cardinal Health or pay Cardinal Health's defense costs in the opioid litigation, whether Cardinal Health can select the policy or policies to provide coverage for the various lawsuits, and the establishment of certain disputed terms under the policy. National Union removed the suit to the Southern District of Ohio pursuant to the court's diversity jurisdiction. Cardinal Health moved to remand to state court, asking the district court to decline jurisdiction. The district court granted Cardinal Health's motion and remanded the case to state court. National Union timely appealed.

## II

We review a district court's decision whether to exercise jurisdiction under the Declaratory Judgment Act for abuse of discretion. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (quoting *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003)). We will reverse only if the district court "relie[d] on clearly erroneous findings of fact, use[d] an erroneous legal standard, or improperly applie[d] the law." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (citation omitted).

## III

A federal court, "[i]n a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The statute confers "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a

discretion on the courts rather than an absolute right upon the litigant.'"  *Id.* at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

To determine whether a district court's decision to exercise or decline jurisdiction was appropriate under the Declaratory Judgment Act, we consider the five *Grand Trunk* factors:

(1)  whether the declaratory action would settle the controversy;

(2)  whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3)  whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4)  whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5)  whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (formatting altered).  Our court has "never assigned weights to the *Grand Trunk* factors when considered in the abstract" and the factors are not always considered equally.  *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  The essential question on review "is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair."  *Id.*  The district court found that the first and second factors favor the exercise of jurisdiction.  As neither party challenges that finding, we discuss only disputed factors three, four, and five.

**A**

"Procedural fencing" refers to "a range of tactics that courts regard as unfair or unseemly," including selecting a forum to start a race for res judicata.  *Hoey*, 773 F.3d at 761.  As noted by National Union, we have been inconsistent in our treatment of the third factor when there is no evidence of procedural fencing.  In *Travelers*, for example, we deemed the third factor "neutral" in the absence of improper motive.  *Travelers Indem. Co. v. Bowling Green Pro. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *see also Cole's Place*, 936 F.3d at 399 (finding the same).  By contrast, in *Northland*, we found the third factor weighed in favor of exercising jurisdiction where there was no evidence of procedural fencing.  *Northland Ins. Co. v. Stewart*

*Title Guar. Co.*, 327 F.3d 448, 453–54 (6th Cir. 2003); *see also S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 280 (6th Cir. 2021) (finding the same).

Here, the district court found no evidence of procedural fencing, which the parties do not dispute, and considered the third factor neutral. The parties dispute how much weight should be assigned to the third factor absent evidence of procedural fencing. National Union argues this factor should weigh in favor of jurisdiction. Cardinal Health asserts the district court's finding of neutrality conforms with our precedent.

National Union urges us "to resolve these inconsistent holdings and make clear that, in the absence of evidence that the removing party engaged in procedural fencing, the third . . . factor should weigh in favor of exercising federal court jurisdiction in a properly removed case." CA6 R. 21, Appellant Br., at 32. But our caselaw does not support such a per se rule. As recently as 2019, we acknowledged that "[i]f there is no evidence of procedural fencing, we *often* find that the factor is 'neutral.'" *Cole's Place*, 936 F.3d at 399 (quoting *Travelers*, 496 F.3d at 272) (emphasis added).[1] Further, the district court noted that weighing this factor in favor of jurisdiction "would make no difference" in its overall evaluation of the factors and its decision to decline jurisdiction. *Cardinal Health, Inc.*, 2021 WL 3184947, at *7. It is ultimately "[c]onsistent with [our] authority" for a district court "to give this factor little weight in its balancing of the factors." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 439 (6th Cir. 2018); *see also Cole's Place*, 936 F.3d at 399 ("The third factor usually does not weigh heavily in the analysis.").

National Union further asks us to "hold, as a matter of law, that where the party seeking to invoke federal declaratory relief is exercising its statutorily-granted right to choose a federal court through removal," the third factor weighs in favor of exercising jurisdiction absent evidence of procedural fencing. CA6 R. 21, Appellant Br., at 39. National Union overlooks the Supreme Court's long-standing directive that the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wycoff Co.*, 344 U.S. at 241. Holding the third factor always weighs in favor of exercising jurisdiction when litigants properly

---

[1]It is also not unusual for our court to find other factors neutral. *See e.g.*, *Cole's Place*, 936 F.3d at 401 (finding the fourth factor neutral); *Flowers*, 513 F.3d at 563 (finding the fourth factor "at worst neutral").

remove to federal court would be contrary to this directive. The district court did not abuse its substantial discretion in deeming factor three neutral.

**B**

Under the fourth factor, we consider "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. This factor "reflect[s] concerns about principles of federalism." *Hoey*, 773 F.3d at 761. Referencing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968–69 (6th Cir. 2000), in which we affirmed a district court's decision to decline jurisdiction with solely factor four weighing against its exercise, the district court here heavily weighed the fourth factor in favor of remand.

As a threshold matter, we note that accepting jurisdiction in this case would increase friction between federal and state courts because there are cases currently pending in Ohio state courts regarding the scope of insurance coverage for distributors sued as part of the opioid litigation, including one before the Supreme Court of Ohio. *See, e.g.*, *Acuity v. Masters Pharm., Inc.*, 160 Ohio St. 3d 1495 (Ohio 2020). The Supreme Court of Ohio's pending decision "may affect how some (but not all) issues in this case are resolved." *Cardinal Health, Inc.*, 2021 WL 3184947, at *8. National Union argues the district court failed to "account for the fact that the forthcoming decision in *Acuity* will provide guidance under Ohio law to all courts, including federal courts." CA6 R. 21, Appellant Br., at 30. The district court, however, properly weighed the pending case in declining jurisdiction. Further, even when *Acuity* is decided, it will not make the district court's decision an abuse of discretion. We review the district court's decision based on the "situation and circumstances" then before the court. *See N.L.R.B. v. Guernsey-Muskingum Elec. Co-op., Inc.*, 285 F.2d 8, 11 (6th Cir. 1960) ("[T]he [appellate] inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances." (quotation omitted)). It would be imprudent and inefficient for us to encourage district courts to delay decisions in cases involving state law whenever a relevant issue is before, but not yet decided by, the state's highest court.

To analyze the fourth factor, we consider three subfactors:[2]

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (quotation omitted). The first subfactor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* When parties seek "a declaration of the scope of insurance coverage, we have recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id.* However, this subfactor points against exercising jurisdiction when "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* National Union is correct in asserting there is "no underlying state court case running parallel to this action" between these parties. CA6 R. 21, Appellant Br., at 21. National Union is incorrect, however, in suggesting that there are no comity concerns due to the lack of a parallel state proceeding. Comity is not so narrow. Ohio state courts are currently applying the insurance provisions at issue to emerging questions about the scope of insurance coverage in relation to the opioid epidemic. For example, these parties dispute whether the conduct alleged by the opioid plaintiffs—failing to report or detect orders of suspicious or excessive orders of opioids, failing to stop the fulfillment of such orders, and failing to oppose improper conduct of other defendants in the opioid litigation—constitutes an "occurrence" under the policy. *See Cardinal Health, Inc.*, 2021 WL 3184947, at *9; DE 1-2, Compl., Page ID 15. These dynamic questions and theories of

---

[2]The district court briefly discussed the subfactors but did not make separate findings for each subfactor. Instead, it analyzed the fourth factor as a whole and found it "weigh[ed] very heavily in favor of" declining jurisdiction. *Cardinal Health, Inc.*, 2021 WL 3184947, at *9. Appellants do not argue that the district court's lack of separate findings for each subfactor constitutes an abuse of discretion. Regardless, the district court's discussion of the fourth factor is sufficient for abuse of discretion review. *See Wilmington Sav. Fund Soc'y, FSB v. Kattula*, No. 19-1138, 2019 WL 7882540, at *2 (6th Cir. Nov. 6, 2019) (remanding because the district court neither discussed nor applied the *Grand Trunk* factors such that the court was "unable to determine whether [the district court] abused its discretion").

liability under Ohio state law implicate concerns of comity, and it is not an abuse of discretion for a district court to hold they first need to be decided by Ohio state courts.

For the second subfactor, our court "generally consider[s] state courts to be in a better position to evaluate novel questions of state law." *Flowers*, 513 F.3d at 560. A district court need not "always turn away a declaratory judgment action when an undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion." *Id.* (quoting *Roumph*, 211 F.3d at 969). If "the state law is clear and . . . the state court is not considering the issues," this subfactor has less force. *Id.* Here, there is a risk of conflict with Ohio courts because this is an area of actively developing state law. Multiple emerging questions of state law—currently being considered by Ohio state courts—must be answered, such as "whether the underlying opioid litigation alleges covered 'damages,' whether the damages are 'because of bodily injury,' and whether there exists a covered 'occurrence.'" *Cardinal Health, Inc.*, 2021 WL 3184947, at *9 (quoting R. & R., *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 2:20-CV-5854, 2021 WL 2309571, at *6 (S.D. Ohio June 7, 2021)). While these questions are well addressed in many factual scenarios, those factual scenarios do not clearly analogize to opioid distribution. This indicates that a federal court is not in a position to reasonably predict how Ohio state courts will answer questions in this case. *Cf. Flowers*, 513 F.3d at 561 ("While no case has directly addressed the issue, the [state] courts' resolution of this issue can be reasonably predicted from existing case law.")

Ohio law is simply not clear on the issue of whether insurers have a duty to defend opioid distributors and thus there is a risk that a federal court's decision will conflict with Ohio state courts currently considering the issues. Further, we have noted that, generally, "states are in a better position to resolve insurance issues governed by state law." *Mass. Bay*, 759 F. App'x at 440; *see also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 815–16 (6th Cir. 2004) ("Where as here, there are two potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction."); *Travelers*, 495 F.3d at 272 (finding the state court was "in the better position to apply and interpret its law" to the interpretation of an insurance contract); *Flowers*, 513 F.3d at 561

(considering state courts "in a better position to resolve the insurance policy interpretation" even with "clear indications from the [state] courts regarding how such an issue should be resolved").

The third subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. While it is not always improper for federal courts to consider questions of insurance contract interpretation, "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815); *see also Cole's Place*, 936 F.3d at 401 ("[T]his court has usually found that the interpretation of insurance contracts is closely entwined with state public policy."). This is especially true where a case is "brought pursuant to the federal courts' diversity jurisdiction and neither federal common law nor federal statutory law apply to the substantive issues of the case." *Bituminous*, 373 F.3d at 816; *see also Travelers*, 495 F.3d at 273 ("This is not a case where federal law will come into play, and, therefore, a state court forum is preferable."). While the opioid insurance coverage cases pending before Ohio state courts do not involve these exact parties, they do involve the same unsettled legal issues of state law necessary to the resolution of this coverage dispute. *See Roumph*, 211 F.3d at 968–69 (affirming remand based only on unsettled state law issues); *Hoey*, 773 F.3d at 760 ("A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law . . . ."). Where, as here, there are "no federal laws . . . at issue," this subfactor "weighs against exercising jurisdiction." *Mass. Bay*, 759 F. App'x at 440.

Overall, comity weighs against exercising jurisdiction when there is a possibility that a district court might "render a judgment inconsistent with the state court" on issues of state law. *Bituminous*, 373 F.3d at 816. This is especially true where "resolution of the insurance controversy . . . requires a ruling on previously undetermined questions of state law." *Id.* at 815. We find that, given our preference to allow state courts to answer questions of insurance contract interpretation and the actively developing nature of insurance coverage claims related to opioid litigation in Ohio state courts, the district court did not abuse its discretion in holding the fourth factor weighs heavily against exercising jurisdiction.

**C**

Under the fifth factor, we analyze whether there is a superior alternative remedy to the federal declaratory action. The district court held that the developing nature of these questions of state law made an Ohio declaratory judgment action a superior remedy. Ohio's declaratory judgments statute permits courts to decide questions of contract construction and to declare rights under the contract. Ohio Rev. Code § 2721.03. Because Ohio provides a procedure for a declaration of rights and "the issues presented involve questions of state law only, the state court is . . . in a superior position to resolve the case." *Bituminous*, 373 F.3d at 816. "We question the need for declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Id.* at 816–17 (quotation and ellipsis omitted).

Our precedent is "somewhat inconsistent" with respect to the fifth factor. *Mass. Bay*, 759 F. App'x at 441. However, it was not an abuse of discretion for the district court to decide that this factor weighs against exercising jurisdiction given the availability of an Ohio declaratory judgment action and the fact that the case involves solely state law issues. *See id.*; *see also Cole's Place*, 936 F.3d at 401 ("[T]he state [declaratory] remedy has the advantage of allowing the state court to apply its own law.").

**D**

As noted, we have "never indicated how these *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion." *Flowers*, 513 F.3d at 563. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Hoey*, 773 F.3d at 759. We afford district courts "substantial discretion to exercise jurisdiction in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Flowers*, 513 F.3d at 554 (quotation omitted). Moreover, we are "reluctant to reverse a district court's decision to decline jurisdiction," *Mass. Bay*, 759 F. App'x at 442, and have generally only done so when the district court did not engage in the *Grand Trunk* analysis at all. *See, e.g.*, *Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) ("Although the district court acknowledged these factors, the court did not appear to apply

them and otherwise included only three lines of analysis explaining its decision to decline jurisdiction."); *Wilmington Sav. Fund Soc'y, FSB v. Kattula*, No. 19-1138, 2019 WL 7882540, at *2 (6th Cir. Nov. 6, 2019) ("Because the district court here did not so much as acknowledge the *Grand Trunk* factors—much less apply them—we are unable to determine whether it abused its discretion, necessitating remand.").

National Union argues the Third Circuit's decision in *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 202 (3d Cir. 2021), compels reversal of the district court's decision to decline jurisdiction.  There, the Third Circuit reversed three district courts' decisions to decline jurisdiction in cases involving insurance coverage and government COVID-19 shutdown orders.  *DiAnoia's Eatery*, 10 F.4th at 196, 211.  The Third Circuit, relying on its own distinct set of factors, found that the district courts "either misinterpreted some of the non-exhaustive factors that [their] Court has stated should be considered, did not squarely address the alleged novelty of state law issues, or did not create a record sufficient to permit thoughtful abuse of discretion review." *Id.* at 202.

Here, the district court adhered to the principles of federalism and comity, engaged in a reasoned analysis of each *Grand Trunk* factor, and addressed adequately the areas of developing state law in declining jurisdiction.  *See Mass. Bay*, 759 F. App'x at 443 (affirming the district court where it "identified the proper standard, analyzed the five pertinent factors, and issued a reasoned opinion declining jurisdiction").  Because the district court did not rely on clearly erroneous factual findings, use an erroneous legal standard, or improperly apply the law, we do not have the requisite "definite and firm conviction" that the district court "committed a clear error of judgement." *See Cole's Place*, 936 F.3d at 395–96; *Flowers*, 513 F.3d at 563 (quotation omitted).

**IV**

Because the district court did not abuse its discretion, we affirm.